## BURT v. BENSON.

### No. 1536—5851.

Commission of Appeals of Texas, Section A.
April 28, 1932.

Lockhart, Garrard & Brown, of Lubbock, for plaintiff in error.

Vickers & Campbell, of Lubbock, for defendant in error.

HARVEY, J.

This is a suit brought by W. D. Benson against H. C. Burt to recover sums called for by certain written instruments executed by Burt to M. G. Abernathy, and by the latter assigned to Benson. The trial court instructed the jury to return a verdict for Benson, and judgment was rendered accordingly. The Court of Civil Appeals affirmed that judgment. 31 S.W.(2d) 663.

In all material respects, the evidence is uncontroverted. The facts are substantially as follows:

E. A. Burke, a citizen of the United States of America, but a resident of Honduras, held, under claim of ownership, certain mining properties in the latter country. He employed M. G. Abernathy to find a purchaser for said properties; and agreed to pay Abernathy a commission of 25 per cent. of the sale price. Abernathy, in pursuance of such engagement, found and produced a purchaser, in the person of H. C. Burt. On September 11, 1926, in the city of Tegucigalpa, Burke and Burt (the former acting for himself and the heir of his deceased wife) entered into a written contract of sale. According to the provisions of this contract, Burke agreed to sell, and Burt agreed to purchase, all of said properties for a total consideration of $1,-000,000. The contract provided that the consideration for the properties was to be paid in various installments. The only portion of the agreed consideration which need be noticed here is the following:

The sum of $700,000 thereof was to be paid by Burt in monthly installments of $5,000

each, beginning January 1, 1928; and a part of these installments was to be applied to the payment of instrument No. 1 herein sued on. Another $50,000 of the agreed consideration for the properties was to be paid to M. G. Abernathy in accordance with the terms of instrument No. 2 herein sued on. Both of said instruments are hereinafter set out. Abernathy agreed to scale his commission, which he earned by producing Burt as purchaser, to the sum of $100,000. The instruments sued on were executed at the same time and in the same transaction that the contract of sale was made between Burke and Burt. They read as follows:

"No. One.

"Tegucigalpa, Honduras, September 11, 1926.

"Mr. M. G. Abernathy, City.

"Dear Mr. Abernathy: In connection with the sale of a certain mining property by me to H. C. Burt, I agree to pay you, out of the amount received by me the sum of Fifty Thousand Dollars, beginning March the 1st, 1928, H. C. Burt is to pay direct to you one-fourth of the amount of five thousand dollars that he is obligated to pay me each thirty days, and I am instructing H. C. Burt to remit to you Twelve Hundred and Fifty Dollars on the first of each month until the total amount of Fifty Thousand Dollars is paid, together with interest at six per cent. per annum from March 1st, 1928, on all unpaid amounts, until fully paid, payable at the Citizens National Bank, Lubbock, Texas.

"E. A. Burke.

"I agree to remit the above monthly payment of Twelve Hundred and Fifty Dollars to M. G. Abernathy at the Citizens National Bank, Lubbock, Texas, contingent on completion of the sale and purchase of said property.

"H. C. Burt."

Indorsement:

"10—15—1926. Pay to the order of W. D. Benson.

"M. G. Abernathy."

"No. Two.

"Tegucigalpa, Honduras, September 11, 1926.

"Mr. M. G. Abernathy, City.

"Dear Mr. Abernathy: In connection with purchase by me of certain mining property from Major E. A. Burke, I agree to pay you the sum of Fifty Thousand Dollars, at the Citizens National Bank, Lubbock, Texas. This amount to be due and payable at the rate of Ten Thousand Dollars per month beginning March 1st, 1928, being a part of your commission on the sale of said property by Major Burke to me and a part of the consideration paid by me for such property. The payment of the above amount is contingent on completion of the sale and purchase of said property.

"H. C. Burt.

"The above arrangement is satisfactory to me.

"E. A. Burke."

Indorsement:

"10—15—1926. Pay to the order of W. D. Benson.

"M. G. Abernathy."

The contract of sale made between Burke and Burt does not purport a present conveyance. Nor does it specifically appoint a time for the completion of the sale except as follows: "H. It is clearly and definitely understood and agreed that the sale and purchase of the aforesaid properties will not be considered as consummated until the final payment of the total amount of $750,000.00 U. S. Currency, but H. C. Burt may pay the entire balance due to E. A. Burke any time after the next session of Congress by depositing road bonds of Honduras at par or in cash in U. S. Currency in the Guaranty Trust Company of New York City or Whitney Central National Bank of New Orleans at the order of E. A. Burke as he may direct."

The recitals of the contract of sale expressly show that Burke claimed that he and said heir held good title to the properties; and the language of the instrument, as a whole, shows by clear implication that Burt's obligation to pay the agreed purchase price depended on good title being in Burke and said heir. The instrument does not purport a surrender of possession of the properties to Burt. Burke died in Honduras in September, 1928, and his estate is under administration there, and the curator of the estate has possession of said properties. Burt has never had possession. Shortly after the above contract of sale was executed, Burt sent his agent to Honduras to make a survey of the properties, and to co-operate with Burke in clearing up defects in the title of Burke, and the heir of his deceased wife, which had something to do with adverse claimants, as well as the Honduran government. Burt, through his agent, assisted, in various substantial ways, to clear up the Burke title, in order that the deal for the property might be closed. These activities covered a long period of time, and at the time of Burke's death all the defects in the Burke title had not been, and are not now, cleared up. No muniments showing good title in Burke, and the heir of his deceased wife have ever been furnished Burt.

■■ It will readily be seen that the commissions which were earned by Abernathy in bringing about the contract of sale were due from Burke, and not from Burt. The sums called for by the instruments sued on were part of the consideration which the latter agreed to pay for the properties; his obligation to pay to Abernathy this part of the consideration arose from these instruments.

By an express provision of these instruments, the obligation of Burt to pay the instruments is made contingent on the "completion of the sale and purchase" of said properties. Manifestly this provision does not refer to the contemporaneous act of Burke and Burt in making the contract of sale. It cannot be reasonably supposed that the parties meant to make Burt's liability depend on an event that occurred in the same transaction that the instruments sued on were executed. We must, therefore, look to the provisions of the contract of sale for an explanation of what was contemplated as a "completion of the sale and purchase" within the meaning of the provision now under consideration. The contract of sale, as already shown, expressly provided that the sale and purchase was not to be considered "consummated" until the full sum of $750,000 was paid as provided in the contract. But it is doubtful that Burt and Abernathy meant for this clause to designate the event upon which depended the liability of the former to pay the instruments sued on. The occasion for doubt in this respect arises from the fact that the period provided for installment payments of $700,000 of the agreed consideration extended far beyond those provided for the instruments sued on. It is more reasonable to believe that the parties contemplated the liability of Burt, under the instruments sued on, as depending on his liability to pay the agreed purchase price for the properties. In other words, that the parties intended that Burt was to become liable to pay the agreed purchase price, including the part represented by the instruments here sued on, in the event the title claimed by Burke and said heir was good or was made good. The sale contract, according to its terms, was executory as to both parties; and Burke and his privies do not appear to have ever been in a position to demand performance of Burt's obligations under said contract. Burt has never been let into possession of the properties, and no title papers showing good title in Burke or his estate, or in said heir of his deceased wife, have been forthcoming. The rule is that: "A purchaser of land under an executory agreement will not be compelled to accept a doubtful title and pay the purchase-money, unless he has agreed to take such a title as the vendor has, or to take the title at his own risk, with a knowledge of the defects." Demaret v. Bennett, 29 Tex. 262; Cooper v. Singleton, 19 Tex. 260, 70 Am. Dec. 333. As has been already shown, the contract of sale contemplates a good title in Burke and said heir as being involved in the subject-matter of the contract. For this reason it cannot be said that Burt is bound to go forward with his purchase agreement while the title, with reference to which he contracted, remains doubtful.

In contemplation of law, Burt is not in default in carrying out his agreement to purchase the properties in question, and consequently is not liable to pay, at this time, any part of the agreed purchase price to Benson or to any one else. According to the record before us, this suit is premature.

We therefore recommend that the judgment of the trial court, and that of the Court of Civil Appeals, be reversed, and that this suit be dismissed, without prejudice.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause dismissed, as recommended by the Commission of Appeals.